IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Joshua L. Gallishaw, #251362, )<br><br>           Plaintiff, )<br><br>v. )<br><br>Warden Raymond Reed, Mannie CI; )<br>Major C. Marsh; Sgt. Jerrey Corum; )<br>Warden NFN Stevenson, BRCI; J.C. Brown;)<br>Dr. John Ozmint; Lt. NFN Gollach; )<br>Ms. NFN Whittaker; Mrs. NFN Taylor; )<br>and Ann Hallman; )<br><br>       Defendants. )<br>_____) | CIVIL ACTION NO. 9:09-2566-CMC-BM<br><br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 10, 2010. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 12, 2010, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response.[1] Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion for summary judgment on February 23, 2010, as well as second response on March 15, 2010.

---

[1]The Court's Roseboro order was initially returned as undeliverable; however, Plaintiff's address was corrected on the docket and the Roseboro order was resent.



Defendants' motion is now before the Court for disposition.[2]

## Background and Evidence

Plaintiff alleges in his verified complaint[3] that on March 19, 2009, while he was housed at the Manning Correctional Institution,[4] he saw some correctional officers "jump" on another inmate (Chris Sinclair), and that when he heard Sinclair scream out he asked the officers what they were doing. Plaintiff further alleges that he told a "Captain McDaniels" what he had seen and heard, and that she then went and asked the officers what they were doing. Plaintiff alleges that when Sinclair was being walked out he told Sinclair that he would call the SCDC hotline for criminal activity and report what he had seen, but that when he got on the phone "the phones were soon after turned."

Plaintiff alleges that the Defendant Warden Reed and other officials retaliated against him for "saying what [he] said, by telling me I was going to lockup," and that he was then immediately shipped (with some others) to the Broad River Correctional Institution lockup. Plaintiff alleges that, six days later while he was still BRCI, he was served with a "false incident report" that had been written by the Defendant Sergeant Corum, which had been signed off on by his supervisor, the Defendant Lieutenant Diamond, as well as the Defendant Major Marsh. Plaintiff alleges that

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[4]Plaintiff is currently housed at the Watereee Correctional Institution. See Court Docket #20.



- 2 -

this violated his rights because the Defendants had "no knowledge of what happened."

Plaintiff alleges that he was advised his disciplinary hearing would be on March 31, 2009, and that on March 25, 2009 he submitted a request to counsel substitute Jones stating that he wanted to call some witnesses. However, Plaintiff alleges that on the date of the hearing, Jones told him (speaking about his witnesses) that "it wasn't going to happen, I might as well get my appeal form". Plaintiff alleges that he told the Defendant Brown, the hearing officer, that he wanted to call witnesses, but that Brown told him they had not received his request so he could not call any witnesses. Plaintiff alleges that this failure to allow him to call witnesses and then being found guilty violated his due process rights. Plaintiff alleges he appealed this decision on April 6, 2009, to "no avail yet". Plaintiff also alleges that he was told by some officers who know Warden Reed that he should have "kept [his] mouth shut", and that Reed was "trying to keep you from talking about what [he] saw".

Plaintiff further alleges that, while at BRCI, he was denied access to the courts by the Defendant Lieutenant Gollach, which caused him to miss a court deadline. Plaintiff alleges that between March 20, 2009 and April 6, 2009, he wrote Gollach several requests about receiving his legal boxes because of a court deadline, "to no avail". Plaintiff alleges that he wrote the Defendant Warden Stevenson about receiving his legal materials two times, but that Stevenson took no action. Plaintiff also alleges that, "subsequent to this", his "Prison Legal News" was being censored and thrown away by the mail room because of SCDC Policy OP-22-12, which applies to SMU inmates. Plaintiff alleges that the "Prison Legal News" is legal material in and of itself, and that denying him this material violated his constitution rights. Plaintiff alleges that the Defendant Director Jon Ozmint is responsible for the policies at the prison.

Plaintiff also alleges that, during the latter part of April 2009, he started having



extreme headaches throughout the day and night, that his feet and hands were turning white and cold, and he was only getting two to three hours of sleep a night. Plaintiff alleges that he went to sick call around May 8, 2009 and asked to see a doctor for a checkup, but that he has not seen a doctor "as of yet". Plaintiff alleges that he is "still having the same problems", but that all he has been told is that his encounter is under review by the physician. Plaintiff states that he does not know the name of the physician, but he is alleging that this doctor is being deliberately indifferent to his serious medical needs. Plaintiff also alleges that, even though he told the nurse that he may need "some x-rays or something", he was only given some "phenylogesic pills" for two days on May 23, 2009.

Plaintiff further alleges that on June 16, 2009, when his "time was up", the Defendants (unknown) kept him on lock up. Plaintiff alleges that the Defendant Whittaker, the SMU Classification Officer, is responsible for making sure that inmates leave the SMU when their time is finished, and that Whittaker therefore violated his constitutional rights by holding him in lockup until August 4, 2009, when he should have been released on June 16, 2009.

Plaintiff also alleges that he was exposed to asbestos while he was housed at the Manning Correctional Institution, and that the Defendants Ozmint, Reed, and Marsh knew of this dangerous condition as well as other unconstitutional conditions of confinement, such as overcrowding, unsanitary conditions, food shortages, and noise levels. Plaintiff further alleges that, since his release from the lockup, he is being housed in the day room at the Ridgeland Correctional Institution, which is overcrowded, and where he has no access to restrooms or to water for hours. Plaintiff further alleges that the lockers are not secure, leaving personal property to be stolen. Plaintiff alleges that he has filed grievances concerning these conditions, but he has received "no answer yet", and that the Defendants Taylor and Hallman, both Grievance Officers, have violated



- 4 -

his rights by not properly processing his grievances. Plaintiff seeks monetary damages as well as certain injunctive and/or declaratory relief.

Plaintiff has attached to his Complaint copies of requests to staff members wherein he raises various complaints, a letter dated May 19, 2009, wherein Plaintiff is inquiring into the status of his DHO hearing appeal as well as two grievances, two Step One grievances dated January 7, 2009 and August 8, 2009, respectively, a copy of a Memorandum to the Plaintiff from Warden Reed responding to his complaints about his living conditions, and a copy of a brief that was entered in an appeal Plaintiff had pursued to the South Carolina Administrative Law Court. See generally, Plaintiff's Verified Complaint, with attached exhibits.

In support of summary judgment in the case, the Defendants have submitted copies of eight grievances filed by the Plaintiff, a copy of Plaintiff's medical records, and a copy of Warden Reed's memorandum to the Plaintiff of January 28, 2009 concerning his "living conditions".

As an attachment to his memorandum in opposition, Plaintiff has submitted a document which is styled as an "Affidavit", but which appears to the unsworn, in which Plaintiff "attests" that the Defendant Corum filed a false incident report on him, and that the Defendants Reed, Marsh and Diamond "all conspired to go along with it." Plaintiff further "attests" that Brown was biased against him in his disciplinary hearing, that Gollach did not give him his legal materials, causing him to miss a court deadline, that Stevenson did not respond to his complaints concerning this problem, that he was denied proper medical treatment while at BRCI, that Ozmint's policies were responsible for him not receiving the Prison Legal News, that he believes he was exposed to asbestos while at the Manning Correctional Institution, and that his grievances have not been properly responded to. Plaintiff has also submitted statements from inmates Chris Sinkler and Chris Russ, both of whom state that Plaintiff did not try to intervene in the incident of March 19, 2009



- 5 -

involving the officers, with Russ further stating that, following this incident, he, the Plaintiff, and inmate Victor Moore were told to "pack our things".  Plaintiff has also submitted a copy of an incident report relating to this incident, copies of some grievances, copies of some correspondence, some request to staff member forms, a copy of a sick call and dental request dated April 20, 2009, a copy of a disciplinary imposed property restriction, and a copy of a letter to the Plaintiff from Prison Legal News advising Plaintiff that the Prison Legal News is not "legal mail".

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

### I.

With respect to Plaintiff's request for declaratory and/or injunctive relief, many of his claims are moot, since he is now housed at the Wateree River Correctional Institution.  See Williams v. Griffin, 952 F.2d at 823 ["[T]he transfer of a prisoner render[s] moot his claim for



- 6 -

injunctive and declaratory relief."]; <u>Taylor v. Rogers</u>, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. This finding would essentially apply to Plaintiff's claims about the conditions of his confinement while he was housed at the Manning Correctional Institution and the Ridgeland Correctional Institution.

Plaintiff's damages claims survive his transfer to another institution. <u>Mawhinney v. Henderson</u>, 542 F.2d 1, 2 (2d Cir. 1976). Hence, any claim for monetary damages Plaintiff may have with respect to the conditions of his confinement while at Manning or Ridgeland would survive his transfer to Wateree, as does Plaintiff's demand for monetary damages regarding his other claims.

## II.

With respect to Plaintiff's claim for damages relating to his disciplinary hearing, in order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 Plaintiff must ordinarily prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a Federal Court's issuance of a writ of habeas corpus. <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-487 (1994). Although <u>Heck</u> involved a conviction in a court of law, the holding in <u>Heck</u> is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction and sanction. <u>Cf</u>. <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997)[Applying <u>Heck</u> to claim challenging a disciplinary proceeding.]; <u>see</u> <u>Stone-Bey v. Barnes</u>, 120 F.3d 718, 721 (7th Cir. 1997)["The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the Plaintiff's Section 1983 claim necessarily would imply the invalidity of that finding, then <u>Heck</u> bars the claim until such time as its requirements are satisfied"].

- 7 -



However, while no evidence has been presented to the Court show that Plaintiff's disciplinary conviction has been overturned, the exhibits provided to the Court show that he was not docked any good time credits as a result of this conviction, nor is there any other indication that this disciplinary conviction affects the length of Plaintiff's overall sentence. Rather, the exhibits reflect that Plaintiff was sentenced to ninety days lock-up for this infraction.[5] The Defendants also do not raise Heck as a possible defense to this claim. Therefore, for purposes of summary judgment, the undersigned has not considered Heck as a bar to Plaintiff's claim arising out of his disciplinary hearing and conviction. Cf. Roller v. Cavanaugh, 984 F.2d 120, 122 (4th Cir. 1993); Strader v. Troy, 571 F.2d 1263 (4th Cir. 1978) [Where an inmate challenges the application to him of certain rules or procedures, but does not argue that he is entitled to immediate release or a speedier release, he may assert such a claim in federal court under 42 U.S.C. § 1983]; Pierce v. Freeman, No. 95-7031, 1997 WL 467533 (4th Cir. 1997) [holding that a prisoner cannot proceed on a § 1983 claim challenging the validity of a disciplinary proceeding resulting in the deprivation of good-time credits]. Even if not otherwise barred by Heck, however, Plaintiff's claim relating to his disciplinary charges, hearing and conviction are still subject to dismissal.

First, it should be noted that while Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits, he is not actually entitled to a due process hearing every time action is taken to control his behavior. See generally, Wolff v. McDonnell, 418 U.S. 539, 557 (1974); Sandin v. Connor, 515 U.S. 472, 478 (1995)[The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"]. The evidence presented to the Court, which includes

---

[5]Petitioner also alleges that he lost phone privileges, visitation, canteen privileges, and access to certain property for nine (9) months. See Court Docket No. 30-3, p. 20.



grievances noting the results of his disciplinary hearing as well as the actions initially taken when Plaintiff was charged with a disciplinary infraction (he was sent to lockup pending disciplinary charges being filed) do not present a genuine issue of fact as to whether Plaintiff was denied any constitutional right, as Plaintiff has no general constitutional right to placement in any particular prison or to certain privileges, nor does he have any constitutional right to placement in any particular custody classification. See Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]; Ordaz v. Lynaugh, 20 F.3d 1171, at * * 2 (5th Cir. 1994)["Wolff . . . does not determine the procedural requirements for disciplinary action such as restriction of commissary privileges."]; Bazzetta v. McGinnis, 430 F.3d 795, 802-05 (6th Cir. 2005)[regulation banning virtually all visitation for inmates found guilty of two or more violations of major misconduct charge of substance abuse was not a dramatic departure of a typical and significant hardship in relation to ordinary incidents of prison life necessary to implicate a state-created liberty interest, and thus did not rise to level of egregious conduct necessary to violate the guarantees of Fourteenth Amendment's procedural due process clause]; Tarney v. Boles, 400 F. Supp.2d 1027, 1040 (E.D. Mich. 2005)[inmate's loss or restriction of telephone privileges for disciplinary reasons is not considered an atypical significant hardship, even when the disciplinary



- 9 -

charges are allegedly false, and therefore does not implicate a liberty interest protected by due process]; <u>Papadakis v. Director</u>, No. 08-670, 2010 WL 1753358 at * 2 (E.D.Tex. Apr. 8, 2010)["[B]eing placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."] (quoting <u>Sandin</u>, 515 U.S. 472).

Therefore, in order to state a § 1983 claim for the action alleged, Plaintiff would have to present evidence sufficient to show that the Defendants' decision in his case was arbitrary, capricious, or based on some other unlawful motive. <u>See generally</u>, <u>Sandin</u>, 515 U.S. at 486; <u>Crowe v. Leeke</u>, 259 S.E.2d 614, 615 (1979). Plaintiff has presented no such evidence. Rather, Plaintiff generally asserts that the Defendant disciplinary hearing officer was biased against him, but offers no more than his own conclusory and self serving assertion that this was the case. The only substantive charge he levels against the hearing officer is that he did not allow Plaintiff to call witnesses. However, he has provided no evidence to show that he in fact made any such request, while the exhibits provided to the Court (setting forth the results of Plaintiff's grievance with respect to this claim) reflect that Plaintiff had been afforded the due process to which he was entitled. <u>Papadakis</u>, 2010 WL 1753358, at * 2; <u>Ordaz</u>, 20 F.3d 1171 at * 2; <u>Slezak</u>, 21 F.3d 590; <u>see</u> <u>Cooper v. Sheriff, Lubbock County, Texas</u>, 929 F.2d 1078, 1083 (5th Cir. 1991)[Less procedural safeguards are required where sanctions are not severe]. In any event, even assuming for purposes of summary judgment that Plaintiff had requested witnesses, who were then not allowed (which can sometimes be the case when security concerns override an inmate's desire for witnesses), Defendants correctly note that Plaintiff has failed to proffer the alleged testimony of these witnesses or offer any other



proof that the outcome of his disciplinary hearing would have differed with their testimony, and has therefore failed to establish any entitlement to damages. <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["even though <u>pro se</u> litigants are held to less stringent pleading standards than attorneys, the Court is not required to 'accept as true legal conclusions or unwarranted factual inferences'"].

Plaintiff's claim that the was kept in lockup past the ninety days given to him for his disciplinary infraction also fails to state a viable claim, as the exhibits provided to the Court show that, following the completion of his ninety day sentence, he could not be immediately released back into the general population because bed space was not available. <u>See Defendants' Exhibit</u>, BRCI-O711-09, Step One and Step Two responses. Plaintiff has provided no evidence to dispute the information contained in these exhibits, and has further failed to show how a violation of his constitutional rights occurred due to this delay. <u>See generally Sweet v. South Carolina Department of Corrections</u>, 529 F.2d 854, 859 (4th Cir. 1975) (<u>en banc</u>) [describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation]; <u>Sandin</u>, 515 U.S. at 486 [holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest]; <u>Beverati v. Smith</u>, 120 F.3d 500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation did not impose such an atypical hardship so as to implicate a liberty interest].

As for Plaintiff's general and conclusory claim that the only reason he was charged with a disciplinary infraction was because he was being retaliated against by one or more of the named Defendants, this allegation is also, standing alone and without any supporting evidence, simply not sufficient to survive summary judgment. <u>See Atkinson v. Bohn</u>, 91 F.3d 1127, 1129 (8th



Cir. 1996) (per curium) [speculative and conclusory allegations cannot support retaliation claim]; Wright v. Vitall, No. 91-7539, 1991 WL 127597 at**1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Southmark Prime Plus, L.P. v. Falzone, 776 F.Supp. 888, 891 (D.Del. 1991); see Nasim v. Warden, Md. House of Correction, 42 F.3d 1472, 1475 (4th Cir. 1995), reh'g 64 F.3d 951 (4th Cir. 1995), cert. denied, 516 U.S. 1177 (1996); see also; Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations].

Therefore, Plaintiff's claim relating to his disciplinary hearing should be dismissed.

### III.

With respect to Plaintiff's access to the courts claim, Plaintiff asserts that he missed a court deadline because he did not timely receive some "legal boxes". Nothing more specific concerning this claim is set forth in Plaintiff's complaint; however, Defendants' Exhibit BRCI-0487-09 reflects that Plaintiff had asked the Defendant Gollach for his legal boxes, but that Gollach had failed to give him these boxes "for over 2 weeks", and that when he did receive his legal boxes on



April 6, 2009, he filed paperwork with the state Supreme Court the "next day", but subsequently received a letter from the Supreme Court stating that his motion had been denied because it was untimely. The response to this grievance states that, due to the large amount of legal boxes Plaintiff had, it took a little longer than normal for the property staff to go through these boxes, that Plaintiff is only allowed one legal box in his cell, and that it appeared Plaintiff had wanted to maintain an excess of legal material in his cell. The response further states that Plaintiff had not provided any evidence to support his allegation that he had missed a court deadline because he was not allowed access to his legal material.[6]

The only exhibit with respect to this claim that has been provided to the Court by the Plaintiff is a copy of a letter order from the Supreme Court of South Carolina dated April 14, 2009, which references the case "The State v. Joshua Gallishaw". This letter order notes that an order dismissing Plaintiff's appeal (presumably in that case) was filed on March 17, 2009, and that any motion for rehearing must have been actually received by the Supreme Court on or before April 1, 2009. The order also further states that Plaintiff's motion to reconsider dated April 6, 2009 was received by the court on April 8, 2009, and was therefore untimely. See Court Docket No. 30-3, p. 14. However, even assuming for purposes of summary judgment that the actions of one or more of the Defendants occasioned a delay in Plaintiff filing his motion to reconsider, Plaintiff has provided

---

[6]The undersigned is constrained to note that this exhibit also reflects that Plaintiff did not conclude his appeal with respect to this grievance until November 12, 2009, which was after the date he filed his complaint. Ordinarily, this would justify the dismissal of this claim. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."]. However, the Defendants have not moved for summary judgment on this ground. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant].



no probative evidence, or even argument, to show that, had any motion to reconsider been timely received by the state supreme court, the original decision issued by the court in that case would have been reversed. Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]. This claim is therefore without merit. Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

As for Plaintiff's complaint about not receiving the Legal News, his own exhibit states that this document does not constitute legal mail. See Court Docket No. 30-3, p. 21. Plaintiff had no constitutional right to receive this publication, and he has therefore failed to set forth a viable claim with respect to this complaint. See Defendant's Exhibit [Policy on access to magazines and publications]; see also Ramirez v. McCaughtry, No. 04-335, 2005 WL 2010173 (W.D.Wisc. 2005) [upholding policy that restricted access to newspapers, magazines, and photographs to inmates in segregation as part of an incentive system for good behavior]; In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) ["Prison officials 'should be accorded wide-ranging deference in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain



- 14 -

institutional security'"] (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979)); <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003) ["We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them"].

Therefore, this claim is also without merit.

### IV.

With respect to Plaintiff's claims regarding the general conditions of his confinement while at the Manning and Ridgeland Correctional Institutions, such general and conclusory allegations, without any more specifics or supporting evidence, do not give rise to a genuine issue of fact as to whether Plaintiff is entitled to damages. During the time period set forth in the complaint, Plaintiff was a prisoner in a state correctional facility, not a hotel. It should be expected that conditions in such a setting are oftentimes less than ideal. <u>Lunsford v. Bennett</u>, 17 F.3d 1574, 1581 (7th Cir. 1994); <u>Hadley v. Peters</u>, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), <u>cert. denied</u>, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting <u>Harris v. Fleming</u>, 839 F.2d 1232, 1235 (7th Cir. 1988)).

Plaintiff has presented no evidence to show that he was not provided with at least the "minimal" necessities required, and therefore the conclusory allegations contained in his verified Complaint about the general conditions of his confinement are not in and of themselves sufficient to maintain a constitutional claim. <u>See</u> <u>generally</u>, Court Docket No. 23-11; <u>see</u> <u>also</u> <u>Beverati</u>, 120 F.3d at 504 and n. 4 [accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but



holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."]; <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) ["only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; <u>Alberti v. Klevenhagen</u>, 790 F.2d 1220, 1228 (5th Cir. 1986) [Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, or emotional deterioration."].

   Further, Plaintiff has presented no evidence to show that he suffered any harm during this period of his incarceration which would entitle him to any monetary damages. *Cf.* <u>Harris</u>, 839 F.2d at 1235 [prisoner deprived of toilet paper, soap, toothpaste and toothbrush while kept in filthy, roach infested cell suffered no punishment when no physical harm resulted]; <u>Isaac v. Fairman</u>, No. 92-3875, 1994 WL 63219, * 5-6 (N.D.Ill. 1994) [allegation that prisoner was provided only one uniform and denied adequate opportunity to wash did not state claim]; <u>Wilson v. Cook County Bd. of Commissioners</u>, 878 F.Supp. 1163, 1167-1168 (N.D.Ill. 1995) [pretrial detainee failed to establish that overcrowding, inadequate staffing, inadequate opportunity for exercise, and inadequate grievance procedures in detention facility violated detainee's due process rights, as detainee failed to allege remedial injury]; <u>Farmer v. Brennen</u>, 511 U.S. 825, 834-835 (1994) [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995) [Prison officials have legitimate penological interests in Administrative Segregation, and they must be given "wide-ranging deference" with respect to their need to maintain order, discipline, and "institutional security"], <u>reh'd</u> <u>denied</u>, 75 F.3d 448 (9th Cir.



1995), cert. denied, County of Kern v. Anderson, 116 S.Ct. 306 (1995).

This claim is without merit and should be dismissed.

### V.

To the extent Plaintiff's claims include accusations that one or more of the named Defendants mishandled or improperly handled his grievances, this is not a claim cognizable in this Court in a § 1983 action, as there is no constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon inmates]; Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982) [even where a state elects to provide a grievance mechanism, violations of its procedures do not deprive prisoners of federal constitutional rights]; Burnside v. Moser, 138 Fed.Appx. 414, 415-416 (3d Cir. June 30, 2005).

Therefore, a state's failure to follow its grievance procedures does not give rise to a § 1983 claim. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo. 1986) [holding that an inmate grievance procedure is not constitutionally required]; see also McGuire v. Forr, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; Moore v. Sergent, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); cf. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure]. While Plaintiff may have some further administrative process he can pursue with respect to this complaint, his



dissatisfaction with the way his grievances were handled does not give rise to a claim prosecutable in a § 1983 action.

## VI.

Plaintiff's final claim concerns his medical care. Specifically, Plaintiff alleges that in late April 2009 he started having extreme headaches and other symptoms, and that although he went to sick call around May 8, 2009 and asked to see a doctor for a checkup, he had not (presumably as of the time of the filing of his complaint) seen a doctor "as of yet". The grievance Plaintiff filed relating to this claim (Court Docket No. 23-5, Grievance BRCI-0710-09) indicates that, while Plaintiff was given some "pills", he wanted to see a doctor and possibly get an x-ray. The response to this grievance notes that Plaintiff was seen on May 10, 2009 for complaints of headaches and other issues. It was documented at that time that Plaintiff's blood pressure was elevated, and it was determined that Plaintiff's blood pressure would be checked once a week for three weeks. The grievance response further states that Plaintiff complained of having a headache during his first weekly checkup, but that he had no further complaints during his next two checkups or thereafter. Hence, Plaintiff's grievance was denied as the Institution determined Plaintiff had received proper medical care.[7]

The Defendants have also submitted a copy of Plaintiff's health services medical summary for the relevant time period, which reflects that Plaintiff was seen on May 10, 2009 complaining of headaches, possibly related to his blood pressure, as well as about a rash under his arms. The encounter note for that date indicates that Plaintiff did not want to take any medication, that on examination he was found to be alert and oriented, and that he was ambulating without

---

[7]It is also noted that this exhibit shows that Plaintiff did not complete his Step Two grievance process with respect to this grievance until October 9, 2009. See note 6, supra.



difficulty. No rash was noted, while there was a "slight elevation" of his blood pressure. Plaintiff was to be checked by a licensed practical nurse once a week for three weeks. Plaintiff was seen again on May 13, 2009, where he was found to stable and oriented times four. With respect to his three weekly blood pressure checks, Plaintiff had the first of these encounters on June 29, 2009, where he was found to be in no acute distress, although still complaining of frontal headaches. Plaintiff's blood pressure on 138/92. Plaintiff was checked again on September 2, 2009, by which time Plaintiff was in lockup (blood pressure reading not noted). Plaintiff was then checked again on July 13, 2009, at which time his blood pressure was 140/88. That encounter also states "no noted distresses, complaints voiced." See Exhibit (Medical Summaries). For his part, the only medical exhibit Plaintiff has provided is a sick call and dental request dated April 20, 2009, relating to having his teeth checked. See Plaintiff's Exhibit.

        In order to proceed with his claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer, 511 U.S. at 837; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). The evidence before the Court does not establish a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Rather, the evidence shows that Plaintiff received regular medical care from medical professionals at the prison for his complaints.

        Plaintiff is apparently upset that he was not referred to a doctor, as he requested, and did not have any x-rays, even though he wanted some taken. However, while Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory



- 19 -

fashion that he did not receive adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents which refute his claims.  See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; see also Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Morgan, 829 F.2d at 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate with respect to this claim.  However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore Plaintiff's federal § 1983 medical claim should be dismissed.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for



- 20 -

violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976)

[§ 1983 claim does not lie for violation of state law duty of care]; <u>Estelle v. Gamble</u>, 429 U.S. 97,

106 (1976)["medical malpractice does not become a constitutional violation merely because the

victim is a prisoner."]; <u>see</u> <u>also</u> <u>Brooks v. Celeste</u>, 39 F.3d 125 (6th Cir. 1994); <u>Sellers v. Henman</u>,

41 F.3d 1100 (7th Cir. 1994); <u>White v. Napoleon</u>, 897 F.2d 103, 108-109 (3d Cir. 1990); <u>Smart v.</u>

<u>Villar</u>, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary

judgment be **granted**, and that this case be **dismissed.**

The parties are referred to the Notice Page attached hereto.



_____

Bristow Marchant
United States Magistrate Judge

May 28, 2010
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

